## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KARL SAFFO and RETA SAFFO,

      Plaintiffs,

vs.                                                                                     No. CIV 20-1220 JB/LF

KURT WHYTE; TIM BENAVIDES,
ADAN MENDOZA; E. ALDERETE,
MARTIN VIGIL; GERMAN MENA;
LARRY REUTTER; TIM JOHNSON and
TEASHA ROYBAL,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court, under 28 U.S.C. § 1915 and rule 12(b)(6) of the

Federal Rules of Civil Procedure, on the Plaintiffs' Complaint for Violation of Civil Rights (Non-

Prisoner Complaint), filed November 20, 2020 (Doc. 1)("Complaint").  Plaintiffs Karl Saffo and

Reta Saffo appear pro se.  For the reasons set forth below, the Court will dismiss this case without

prejudice for failure to state a claim upon which relief can be granted.

## PROCEDURAL BACKGROUND

The Saffos assert the following claims pursuant to 42 U.S.C. § 1983, against the

Defendants, who are employees of the Santa Fe County Sheriff's Office, the New Mexico State

Police, or the New Mexico Department of Public Safety: (i) "Conspiracy to Cover-up"; (ii) "Civil

Rights Abuse/Egregious Misconduct"; (iii) "Stalking"; (iv) "Harassment"; (v) "Deliberate

Dereliction of Duty Damage to property"; (vi) "Falsifying Information on tort claim response";

and (vii) "Deliberate Infliction of Undue Emotional Stress."  Complaint ¶ II(B), at 3-4.  The Saffos

allege:

      We had numerous prowlers on our 11-acre range at night for years (since

we moved in 2013 from out of state), often breaking into our home both while we were home and also while we were out, breaking into our guesthouse, firing weapons (guns) at us in the dark (from front gate as well as back yard), releasing/killing our livestock, etc.  SFCSO became involved (Det. Alderete) but then he/they decided we were "crazy" and that we were fabricating these stories of criminal trespassers, break-ins, theft, peeping Toms, damage to property, etc -- and they suddenly did not respond to any of our emails or voicemails any longer.  They completely ignored us and our pleas for help.  We brought into SFCSO a video recording off our security camera of one night of non-stop shooting (3 hrs) in our backyard yet they still would not respond -- ignored us.

In summer of 2017 Sgt. Tim Benavides responded to our call for service (he appeared to be under the influence of drugs or alcohol) as 6 persons w/ flashlights were roaming our property and quickly approaching the home.  Sgt Benavides was behaving illogically and erratically w/ great impudence saying he didn't SEE any of the prowlers while his partner and our son and my wife all stood together looking directly AT the very obvious prowlers (Det. Alderete indicated he felt Benavides was "friends" with some vigilante type neighborhood watch group whom we didn't know of, that was over-stepping their boundaries).  As Sgt. Benavides abruptly walked away he said "What drugs are you on? Do you want more drugs? Need more drugs? Do you need me to call an ambulance for you guys? (note that we were, of course 100% sober, as we do NOT do drugs -- he was simply intimidating us and insinuating that he could place drugs on the property and cause us more problems.

We then almost immediately began to receive SWAT calls -- calls from SFCSO dispatch saying they'd received 911 hang-up calls from us and sending officers out to our home -- almost nightly (sometimes several times in a night/day) and usually while we were sleeping or preparing to sleep.  These all began the very next night after the intoxicated officer was here (Tim Benavides).  They said the calls were supposedly coming from our landline (even after we had completely disconnected that landline!).  SFCSO dispatch then began calling our cell phones non-stop, all three of our cell phones, saying we'd called them (when of course we had NOT).  Regardless as to how many times we changed our phone numbers (maybe 15-20 times) they would somehow obtain them and immediately begin in w/ SWATTING us again, sending officers to our home to harass us (usually awakening us from our sleep).

Oddly enough the RECC log we obtained did NOT show most of those supposed "false" 911 calls they claimed had come in to them (all 911 calls go through RECC).  Director of the RECC (Ken Martinez) was astonished, completely shocked that no one from SFCSO had EVER even informed him of all the incredible number of SWAT calls we'd received, as he said he worked directly with them.  He told us he called for an immediate meeting with SFCSO and would get back with us -- and then suddenly he, too, began to ignore our emails/calls to him, then finally disclosed to us that he could NOT help us as he was retiring -- stepping

down from his post at RECC I(where all 911 calls come through).

Complaint ¶ III(C), at 6.  When describing their injuries, the Saffos stated:

> [We suffered] SEVERE emotional distress and medically diagnosed PTSD (diagnosed by psychiatrist) from the nonstop deliberate ongoing harassment, stalking, negligence/deliberate dereliction of duty, illegal entering of home by armed uncalled NMSP officers, deliberate stone-walling by DPS in falsely responding to the legal tort sent falsely claiming that NMSP had NEVER been to our home before (a cover-up) and that no records for us or our address existed.  That false and deliberate misinformation caused our attorney to decline taking our case (since she was told no "evidence" existed of the horrific nights in November 2018). And NMSP refused to admit they were here and refused to give us the officer names or allow their employees to do so, as well-until AFTER we got the Governor's Office involved a year later THEn and only then did NMSP FINALLY admit they WERE indeed here but falsely claimed it was for a "call for service."

Complaint ¶ IV, at 7-8.

The Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico, notified the Saffos that the Complaint fails to state a claim upon which relief can be granted, because it fails to state with any particularity what each Defendant did to each Plaintiff, when each Defendant committed these alleged unspecified actions, the violation of a specific legal right secured by federal law, and which Defendant the Saffos believe violated each right.  <u>See</u> Memorandum Opinion and Order to Show Cause, filed November 24, 2020 (Doc. 4)("Order to Show Cause").  Judge Fashing ordered the Saffos either to: (i) show cause why the Court should not dismiss the Complaint for failure to state a claim; or (ii) to file an amended complaint.  <u>See</u> Order to Show Cause at 2.

The Saffos did not show cause or file an amended complaint.  Instead, the Saffos filed a response which states:

> We can send you the details (and will do so, if so needed) that will provide you with all the evidential information you need to make a proper decision as to whether or not our case is valid and/or viable, but we would not want that information to be made public, or posted online for the world to view (yet), as potential home buyers might mistakenly think the issues we've had with law

enforcement are somehow related to or with our property . . . .  We will send all that information (what each and every person we have named in the complaint has done . . . if we can be assured that that very personal information will not be posted online or made public before we sell our home.

Response at 1-2, filed December 10, 2020 (Doc. 5)(stating Plaintiffs "have been unable to obtain an attorney" and "are working hard to find an attorney").

Judge Fashing denied the Saffos' request to seal the Amended Complaint and ordered that the Saffos "may, within 30 days of entry of this Order, file an amended complaint.  Failure to timely file an amended complaint may result in dismissal of this case without prejudice." Memorandum Opinion and Order Denying Request to Seal Amended Complaint at 3, filed December 14, 2020 (Doc. 7).

The Saffos did not file an amended complaint by the January 13, 2021, deadline.

## LAW REGARDING PRO SE LITIGANTS

When a party proceeds pro se, a court construes his or her pleadings liberally and holds them "to a less stringent standard than [that applied to] formal pleadings drafted by lawyers."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[I]f the Court can reasonably read the pleadings to state a valid claim on which [the petitioner] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Hall v. Bellmon, 935 F.2d at 1110.  The Court will not, however, "assume the role of advocate for the pro se litigant."  Hall v. Bellmon, 935 F.2d at 1110.  "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994).

## LAW REGARDING SUA SPONTE DISMISSAL UNDER RULE 12(b)(6)

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A plaintiff must allege "enough facts to

state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

570 (2007)("Twombly").  A district court should not dismiss a pro se complaint under rule 12(b)(6)

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief."  Fed. R. Civ. P. 12(b)(6).  While dismissal under rule 12(b)(6)

generally follows a motion to dismiss, a court's sua sponte dismissal of a complaint under rule

12(b)(6) is not an error if it is "'patently obvious that the plaintiff could not prevail on the facts

alleged, and allowing him an opportunity to amend his complaint would be futile.'"  Curley v.

Perry, 246 F.3d at 1282 (quoting Hall v. Bellmon, 935 F.3d at 1110).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a judicial officer
> for an act or omission taken in such officer's judicial capacity, injunctive relief shall
> not be granted unless a declaratory decree was violated or declaratory relief was
> unavailable . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action, and it does not create any

substantive rights; substantive rights must come from the Constitution of the United States of

America or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002).

Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting

under color of state law, violates the claimant's federally protected rights.  To state a claim upon

which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal

right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.

See West v. Atkins, 487 U.S. 42, 48 (1988).  The Court has noted:

> [A] plaintiff "must establish (1) a violation of rights protected by the federal
> Constitution or created by federal statute or regulation, (2) proximately caused (3)
> by the conduct of a person (4) who acted under color of any statute, ordinance,
> regulation, custom[,] or usage, of any State or Territory or the District of
> Columbia."

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F.Supp.2d 1052, 1063 (D.N.M. 2010)(Browning,

J.)(second alteration in original)(quoting Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010

WL 1608884, at *11 (D.N.M. March 30, 2010)(Browning, J.)).

The Supreme Court of the United States of America has clarified that, in alleging a § 1983

action against a government agent in their individual capacity, "a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  Consequently, there is no respondeat superior

liability under § 1983.  See Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is

inapplicable to Bivens[1] and § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution."); Bd. of

Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Entities cannot be held liable solely on the

basis of the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell

v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 689 (1978).  Supervisors can be held

liable only for their own unconstitutional or illegal policies, and not for their employees' tortious

---

[1]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388
(1971)("Bivens"), the Supreme Court held that a violation of the Fourth Amendment of the
Constitution of the United States "by a federal agent acting under color of his authority gives rise
to a cause of action for damages consequent upon his unconstitutional conduct."  Bivens, 403 U.S.
at 389.  Thus, in a Bivens action, a plaintiff may seek damages when a federal officer acting in the
color of federal authority violates the plaintiff's constitutional rights.  See Bivens, 403 U.S. at 389.
See also Ashcroft v. Iqbal, 556 U.S. at 675-76 (stating that Bivens actions are the "federal analog"
to § 1983 actions).

acts.  See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).  The Tenth Circuit also recognizes that Ashcroft v. Iqbal has limited, but not eliminated, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson states:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

Dodds v. Richardson, 614 F.3d at 1199 (quoting 42 U.S.C. § 1983).  The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d at 1200.  It concludes that Ashcroft v. Iqbal does not alter "the Supreme

Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200.  More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

## ANALYSIS

Having carefully reviewed the Complaint, and the relevant law, the Court will dismiss this case for failure to state a claim upon which relief can be granted, because the Complaint does not state a civil rights claim for relief under 42 U.S.C. § 1983.  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of state law that result in a deprivation of rights that the Constitution secures.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. at 48.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Under rule 12(b)(6), the court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading.  See Twombly, 550 U.S. at 555; Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989).

The Saffos indicated that they are bringing claims pursuant to "§ 1983."  Complaint ¶ II, at 3.  If the Saffos intend the Complaint to be a § 1983 action, the Court must dismiss the action without prejudice for failure to state a claim upon which relief can be granted, because a plaintiff asserting a § 1983 claim "'must establish . . . a violation of rights protected by the federal Constitution or created by federal statute or regulation.'" Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d at 1063 (quoting Martinez v. Martinez, No. CIV 09-0281, 2010 WL 1608884, at

*11 (D.N.M. Mar. 30, 2010)).  The Saffos may have claims for a warrantless entry into their home or for discrimination in the provision of police protection.  Although the Complaint alleges, however, that "they suddenly did not respond to any of our emails or voicemails any longer.  They completely ignored us and our pleas for help," the Complaint does not identify who "they" are.  Complaint at 6.  Moreover, there are no allegations identifying which Defendants knew of the Saffos' requests for help and had an opportunity to respond.  See Complaint ¶ III(C), at 6.  The Complaint does not identify the persons who instigated the SWAT calls or the persons who "illegal[ly] enter[ed]" their home.  Complaint at 7.   None of the factual allegations expressly mention Defendants Whyte, Mendoza, Vigil, Mena, Reutter, Johnson or Roybal.  The Saffos do not allege sufficient facts to show plausibly that each of the named Defendants deprived them of a federal right.  See Complaint at 7.  Despite having "all that information (what each and every person we have named in the complaint has done," the Saffos decline to file an amended complaint.  Response at 2.  Consequently, the Saffos have not stated a claim under § 1983.  The Court will dismiss this case without prejudice for failure to state a claim upon which relief can be granted.  See 28 U.S.C. § 1915(e)(2)(B)(ii)("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted.").

    **IT IS ORDERED** that: (i) this case is dismissed without prejudice; and (ii) and Final Judgment will be entered.

_____
UNITED STATES DISTRICT JUDGE

*Parties*:

Karl Saffo
Santa Fe, New Mexico

    *Plaintiff pro se*

- 9 -

Reta Saffo
Santa Fe, New Mexico

*Plaintiff pro se*